[Civ. No. 23710.   First Dist., Div. Two.   Sept. 27, 1967.]

FRANK B. SHUPE et al., Plaintiffs and Respondents, v. PAUL C. NELSON et al., Defendants, Cross-complainants and Respondents; THOMAS H. SMITH et al., Cross-defendants and Appellants.

Ring, Turner & Ring and Robert J. Athey for Cross-defendants and Appellants.

No appearance for Plaintiffs and Respondents.

Hamm, Waldie & Rockwell and James D. Hill for Defendants, Cross-complainants and Respondents.

TAYLOR, J.—On this appeal from a judgment on a cross-complaint decreeing the reformation of appellants' deeds to

provide access to a roadway for a lot owned by plaintiffs and respondents, Frank and Geraldine Shupe (hereafter Shupes),[1] the contentions are that: respondents had no standing to seek the relief granted pursuant to section 3399 of the Civil Code; the evidence does not support the judgment as to the mutual mistake of the parties in omitting the reservation of access rights for the benefit of the Shupe property; and the court exceeded its jurisdiction by further ordering appellants to execute grant deeds to the Department of Veterans Affairs in conformance with the judgment.

Viewing the record most strongly in favor of the judgment, as we must, the following facts appear: the four contiguous lots involved in this action all front on Sunnyvale Place, a cul-de-sac and roadway that extends southward from Sunnyvale Avenue in Pleasant Hill. Lots 48, 45 and 49 are on the western side of Sunnyvale Place. Lot 48 is a rectangle with its long sides running east and west; its southern boundary is contiguous to the northern boundaries of Lots 45 and 49. Lot 55, located on the eastern side of Sunnyvale Place, is a rectangle with its long sides running north and south; most of its western boundary is contiguous to the eastern boundary of Lot 48.

In 1961, respondent, Jack Walters, was the president and owner of respondent, J. Williwalt, a corporation (hereafter Corporation); respondent, Paul Nelson (hereafter Nelson), was employed by the Corporation, served as its secretary, and shared in its profits; he did not, however, own any of its shares. When these parties subsequently formed the Jack H. Walters Company, Nelson became its secretary and acquired some of its stock. In 1961, the Corporation acquired adjoining parcels Nos. 48, 45 and 49 and planned to develop them along with Lot 55. To prevent a merger of titles and since the subdivision of Lots 48, 45 and 49 had already been approved and the financing arranged, the property on the east side of Sunnyvale Place was acquired for the Corporation by the Nelsons in their own name rather than in the name of the

<hr>

[1] The Shupes initiated this action against respondents, Paul C. and Marion Nelson, J. Williwalt (a corporation), and Jack H. Walters, for negligence, breach of contract and misrepresentation after access to the roadway from their garage and driveway was cut off by a fence constructed by appellants Smith. Respondents Nelson, Williwalt and Walters, answered and cross-complained for reformation of their deeds to appellants to include the reservation of a right-of-way for the benefit of the Shupe parcel. The appeal is from the judgment in favor of the cross-complainants. By stipulation, the issues raised by the complaint were deferred.

Corporation. The proposed land division of this property into two lots (52 and 55) was filed by Nelson in May 1961 and showed access to be over Sunnyvale Place. After the division was accomplished, Lot 55 was southernmost and shared most of its western boundary with Lot 48. The Corporation planned to develop the four lots together, with all of the homes fronting and having access to Sunnyvale Place.

The homes on Lots 48, 45 and 49 were built according to the plan, and sold by the Corporation as owner and contractor as follows: on July 25, 1961, Lot 48 to appellants, Garrett M. and Sandra Webster (hereafter Websters); on October 25, 1961, Lot 45 to appellants, Cyrill D. and Arvilla L. Buresh (hereafter Bureshs); and on December 13, 1961, Lot 49 to appellants, Stephen P. and Betty A. Fehrenbach (hereafter Fehrenbachs). Each of these deeds contained an easement for the use of Sunnyvale Place and the necessary reservations of rights-of-way for the use of Sunnyvale Place for the benefit of Lots 48, 45 and 49, but (unbeknown to any of the parties at that time) failed to include a similar grant and reservation for the benefit of Lot 55. As secretary of the Corporation, Nelson had the responsibility of transmitting proper instructions to the title company for these sales.

Appellants (or their predecessors in title) were in possession in 1962, when the house on Lot 55 was built by the Jack Walters Company. The house, like the others, had its garage and driveway fronting on Sunnyvale Place. However, because a row of poplar trees extended almost all along the western boundary of the lot, the garage and driveway were located on the southernmost portion of Lot 55. On May 2, 1962, at the direction of the Corporation, the Nelsons conveyed Lot 55 to the Department of Veterans Affairs; on May 15, 1962, the Department of Veterans Affairs conveyed Lot 55 to the Shupes.

The Shupes and the respective owners of the other three parcels used Sunnyvale Place for ingress and egress for pedestrian and vehicle traffic as well as various utility lines. Appellants, or their predecessors in title, saw the owners of Lot 55 using Sunnyvale Place for these purposes and made no objection.

On April 9, 1964, the Websters conveyed Lot 48 to appellants, Thomas H. and Louise D. Smith (hereafter Smiths). Before completing the purchase, the Smiths saw the location of the driveway and garage on the Shupe property, were also aware of the use of Sunnyvale Place by the owners of all of

the lots and the easements of the Buresh and Fehrenbach lots. On receipt of the preliminary title report, the Smiths discovered that their deed made no mention of the access rights to Sunnyvale Place for the Shupe property. Thereafter, the other appellants discovered the similar omissions in their deeds and this action ensued.

The trial court found that the Corporation, the Nelsons and Walters had a common interest in and common plan of development for Lots 45, 48, 49 and 55; that as part of this plan, they intended to reserve Sunnyvale Place for the joint use and benefit of all four lots, but as the result of mutual mistake, omitted the reservation for the benefit of Lot 55 in the conveyances to appellants. Accordingly, the court entered its judgment decreeing a reformation of all of the deeds to include the omitted reservation and further ordered appellants to execute and deliver similarly reformed grant deeds to the Department of Veterans Affairs for the benefit of the Shupes.

Appellants contend that since respondents did not own any of the parcels in question at the time this action was filed, they were not ''aggrieved parties'' entitled to seek reformation pursuant to section 3399 of the Civil Code. The statute, so far as pertinent, provides: ''When, through . . . mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.''

The right to reformation of an instrument is not restricted to the original parties to the transaction (*Merkle* v. *Merkle*, 85 Cal.App. 87, 105 [258 P. 969]). An aggrieved party need not be an original party to the transaction but includes one who has suffered prejudice or pecuniary loss (*Watson* v. *Collins*, 204 Cal.App.2d 27, 32 [21 Cal. Rptr. 832]). Under these definitions, respondents obviously became aggrieved when the Shupes filed their complaint in this action.

The protected ''third persons'' referred to in section 3399 are not those who purchase with notice, actual or constructive, of the rights of other persons whose interests have been described defectively in written instruments (*Saxon* v. *DuBois*, 209 Cal.App.2d 713, 718 [26 Cal.Rptr. 196]). Notice

is a question of fact (*Lindsay* v. *King*, 138 Cal.App.2d 333, 343 [292 P.2d 23]). Here the uncontroverted evidence indicates that all of appellants had notice of the use of Sunnyvale Place made by the owners of the Shupe parcel. ■ We conclude that the trial court properly held that respondents were entitled to seek relief against appellants pursuant to section 3399.

■ Appellants next contend that the evidence does not sustain the finding that respondents were the owners of Lot 55 at the time of the conveyances to appellants. While the Corporation was never the record title holder of Lot 55, there is ample evidence to support the trial court's conclusion that respondents had a common interest in all four parcels. As indicated above, when Nelson and his wife acquired title to the parcel that was to be divided into Lots 52 and 55, they took title for the Corporation, which also controlled their subsequent sale of Lot 55 to the Shupes. Title was placed in Nelsons' name for the purpose of preventing a merger of the record title of this property with the adjacent Lots 48, 45 and 49, which already constituted a completed subdivision owned by the Corporation, and for the additional purpose of facilitating future financing. Nelson, as secretary of both the Corporation and the Walters Company, was aware of the plans to develop all four of the parcels together. All of the homes were built by corporations having a common dominant ownership and control. At the time of the construction of the homes on Lots 48, 45 and 49, the Corporation was both the owner and contractor and by the time the house on Lot 55 was built in 1962, the Corporation's contracting operations were performed by the newly formed Walters Company. The evidence amply sustains the finding that at the time of the conveyances to appellants, all four lots were owned by the same common grantors.

Appellants further contend that the evidence does not sustain the trial court's finding of mutual mistake by all of the parties to the original conveyance to appellants. ■ The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing (*Bailard* v. *Marden*, 36 Cal.2d 703, 708 [227 P.2d 10]). In order for respondents to obtain this relief, there must have been an understanding between the parties on all essential terms, otherwise there would be no standard to which the writing could be reformed (*Bailard* v. *Marden, supra*). Section 3399 of the Civil Code

(quoted above) incorporated this principle by providing that, under specified conditions, a written contract which does not truly express "the intention of the parties" may be revised so as to set forth "that intention." As pointed out in *Bailard* v. *Marden, supra,* this language refers to a single intention which is entertained by both parties.

Reformation may be had for a mutual mistake or for the mistake of one party which the other knew or suspected, but in either situation the purpose of the remedy is to make the written contract truly express the intention of the parties.

Where the failure of the written contract to express the intention of the parties is due to the inadvertence of both of them, the mistake is mutual and the contract may be revised on the application of the party aggrieved (see e.g., *Mills* v. *Schulba,* 95 Cal.App.2d 559 [213 P.2d 408]).

When only one party to the contract is mistaken as to its provisions and his mistake is known or suspected by the other, the contract may be reformed to express a single intention entertained by both parties. Although a court of equity may revise a written instrument to make it conform to the real agreement, it has no power to make a new contract for the parties, whether the mistake be mutual or unilateral (*Lemoge Elec.* v. *County of San Mateo,* 46 Cal.2d 659, 663-664 [297 P.2d 638]).

In order to reform a written instrument, the party seeking relief must prove the true intent by clear and convincing evidence. However, the clear and convincing evidence rule applies only at the trial level. On appeal, it is assumed that the trial court applied the proper standard and the judgment will not be upset if there is substantial evidence to support it (*California Pac. Title Co.* v. *Moore,* 229 Cal.App.2d 114, 117 [40 Cal.Rptr. 61]).

Here, there was ample evidence of the common intent and plan of respondents to develop the four lots together with access to Sunnyvale Place for each home. The lot division plan filed in May 1961 indicated that Lot 55 would have access to Sunnyvale Place. As indicated above, respondents' corporation was the common grantor of all four lots. Nelson, as secretary of the Corporation, failed to properly instruct the title company at the time of the 1961 conveyances that Lot 55 was part of the same ownership and that the easements and right to use Sunnyvale Place should also be included for the benefit of that lot. Mistake by a scrivener or drafts-

man in reducing the intent of the parties to writing is ground for reformation (*Mills* v. *Schulba, supra*).

As to the mutuality of the mistake here in question, the uncontroverted evidence indicates that at the time construction commenced on Lot 55, the other three lots were occupied by appellants or their successors in interest. It was apparent from the nature of the construction that the occupiers of Lot 55 would have the use of Sunnyvale Place. For two years after the construction was completed, the owners of Lot 55 used Sunnyvale Place in the same manner and with the full knowledge of the owners of Lots 48, 45 and 49. As the deeds to these three lots contained the necessary mutual reservations of rights, it can reasonably be inferred that the owners thereof assumed that all of the deeds contained the necessary reservations of rights for the use of Sunnyvale Place by all four lots and that they behaved accordingly. Therefore, taking into account all of the circumstances of the transaction, the court properly concluded that the deeds did not reflect the true intent of the parties and ordered reformation of the deeds to appellants (*California Pac. Title Co.* v. *Moore, supra*; *Cline* v. *Haines,* 192 Cal.App.2d 560 [13 Cal. Rptr. 797]).

Finally, appellants contend that the trial court exceeded its jurisdiction in ordering them to execute deeds conforming to the judgment to the Department of Veterans Affairs for the benefit of the Shupes. Appellants contend that this portion of the judgment exceeds the relief requested and is not necessary in view of the reformation of all of the other deeds. This contention is patently without merit. The deeds containing the necessary right-of-way to the Department of Veterans Affairs are simply another step in completing the relief requested. A court of equity has the power to administer complete justice by correcting all subsequent mistakes that grew out of the first (*Voge, Inc.* v. *Rose,* 205 Cal.App.2d 534, 538 [23 Cal.Rptr. 87]). Furthermore, the Department of Veterans Affairs holds the naked title only for purposes of security and is not an indispensable party in an action for reformation (*Cline* v. *Haines, supra,* p. 563). Accordingly, we conclude that that portion of the decree was likewise proper.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.