**In re John PAVICH, Debtor.**

**Leslie BERNSTEIN and Elaine Bernstein, Plaintiffs,**

v.

**John PAVICH, et al., Defendants.**

**Bankruptcy No. 92–27109–A–13. Adv. No. 93–2054.**

United States Bankruptcy Court, E.D. California, Sacramento Division.

Jan. 2, 1996.

Richard Bernstein, Brodovsky & Brodovsky, Sacramento, California, for plaintiffs/creditors Leslie Bernstein and Elaine Bernstein.

Eric Schwab [formerly with] Law Office of W. Scott de Bie, Sacramento, California, for defendant/debtor John Pavich[1].

Clyde O. West, Sacramento, California, for defendant Thomas Freeburger.

Michael Peritore, Sacramento, California, for defendant Zarko Stojanovich.

Jeffrey R. Meyer, U.S. Department of Justice, Washington, DC, for defendant Internal Revenue Service.

Yvonne Aldama, Sacramento, California, for Chapter 13 Trustee Lawrence J. Loheit.

Defendant Ljubica Pavich, Elk Grove, California, in *pro per* (who did appear, however, at the hearing).

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Chief Judge.

Debtor John Pavich brought this motion for summary judgment in this adversary proceeding to determine the order and priority of liens and to determine the distribution of the remaining funds on hand from the sale of the Debtor's residence. Plaintiffs Leslie and Elaine Bernstein joined in this motion. The Internal Revenue Service ("IRS") filed a separate motion for summary judgment to determine its priority, admitting subordination to the consensual lien of Plaintiffs Leslie and Elaine Bernstein.

## I. *FACTUAL BACKGROUND*

Prior to July 2, 1987, Debtor John Pavich and his wife, Defendant Ljubica Pavich ("Ljubica"), owned as joint tenants, the real property at 9440 Grant Line Road, Elk Grove, California (hereinafter "the property" or "the residence"), subject to a deed of trust

held by Citibank. They also owned an adjacent parcel of real property which they sold on June 29, 1987 to Robert D. and Jo Ann Bertram. The grant deed for this sale was recorded a few days later on July 2. On August 14, 1987, Defendants executed a promissory note in the amount of $25,000 in favor of Plaintiffs Leslie Bernstein and Elaine Bernstein (hereinafter "Plaintiffs"). The deed of trust intended to secure the Plaintiffs' loan was recorded in the Sacramento County Recorder's Office on August 24, 1987 (hereinafter "the 1987 deed of trust"). However, the property description contained in that deed of trust actually described the adjacent parcel previously sold to the Bertrams.

In November and December 1987 two abstracts of judgment, each against the Debtor individually, and doing business as J & B Painting, were recorded in the Sacramento County Recorder's Office. Defendant Thomas Freeburger recorded his abstract on November 9 in the amount of $3,300.12, and on December 24, Defendant Zarko Stojanovich recorded his abstract for $50,841.

When the title company handling the Bernstein loan transaction discovered that the 1987 deed of trust described the adjacent parcel rather than the residence, it requested the Debtor and Ljubica to execute a new deed of trust in favor of Plaintiffs. The new deed containing the legal description of the residence was recorded on January 6, 1988 (hereinafter "the 1988 deed of trust").

On March 11, 1988, Debtor filed an individual petition for relief under Chapter 7 of the Bankruptcy Code in this court (case No. 288–01628–A–7), listing Defendants Freeburger and Stojanovich as creditors. The Debtor received his discharge on August 8, 1988, and the case was subsequently closed. Neither he nor the trustee, however, took any action to avoid any of the liens against the property.

Defendant Kerr Stock Farm was not listed as a creditor, although its claim apparently pre-dated the filing of the Chapter 7 petition. On November 16, 1989, Defendant Kerr

1. John Pavich passed away on March 16, 1994, prior to the filing of, and hearing on, this motion. Nevertheless, this memorandum will refer to him as the Debtor as if he were the real party in interest.

Stock Farm recorded an abstract of judgment against the Debtor individually in the amount of $10,059.

On July 30, 1991, the IRS recorded a tax lien against John and Ljubica Pavich in the amount of $7,413 for the 1986 tax year. The IRS recorded a second tax lien on September 27, this time in the amount of $1,029.97 for the 1990 tax year. Prior to the second IRS lien, Sacramento Prosthodontic recorded an abstract of judgment on September 18, 1991 against the Debtor individually for $2,709.47.

On January 17, 1992, the Debtor filed an individual petition for relief under Chapter 13 of the Bankruptcy Code in this court (Case No. 92–20505–A–13). Five days later, creditor Retailers Credit Association ("RCA") recorded an abstract of judgment against both the Debtor and Ljubica in the amount of $1,850.64. There is no indication that RCA obtained relief from the automatic stay before recording its abstract. On July 14, 1992, the case was dismissed for lack of a feasible plan.

Debtor filed the instant Chapter 13 case (Case No. 92–27109–A–13) again as an individual on August 14, 1992. He listed the residence as his homestead, claiming an exemption in the amount of $100,000 on the grounds that he was disabled. No objections were timely filed to his exemption claims.

In his Plan filed with the court on September 10, the Debtor proposed to pay $100 per month for 12 months and to sell his residence within the same time "so as to pay all debts in full." Pursuant to an order of this court filed on September 16, 1992, (hereinafter "the order of sale") the property was sold free and clear of liens and other interests for $300,000. As provided by the order of sale, Citibank, as the senior lienholder, and escrow fees and closing costs were paid through escrow, with unpaid liens and encumbrances attaching to the remaining proceeds, which were transferred to the Chapter 13 Trustee to be held in a blocked, interest-bearing account. The balance of the proceeds currently held by the Chapter 13 Trustee is approximately $84,750.00. Ljubica, the IRS, the judgment lien creditors, and the Chapter 13 Trustee all claim an interest in the sale proceeds.

On February 3, 1993, Plaintiffs Leslie Bernstein and Elaine Bernstein filed this adversary proceeding to determine the priority of the remaining claims to the proceeds of the sale of the property. Although the Debtor died in March of 1994, his former counsel filed the instant motion for summary judgment in October. Plaintiffs joined the motion and the IRS filed a concurrent motion for summary judgment. All movants seek a determination of each creditor's priority status.

## II. *ISSUES*

These motions for summary judgment raise a number of issues. The more significant issues may be summarized as follows. First, are Ljubica's rights in the property separate from the Debtor's, and if so, what effect do the asserted liens have on her interest? Second, does the 1988 deed of trust correct and relate back to the filing of the 1987 deed of trust so as to give Plaintiffs priority over the intervening judgment liens? Third, do the Debtor's homestead rights take precedence over the judgment liens? Fourth, what is the priority of the IRS tax liens? Fifth, how should the proceeds be distributed?

## III. *STANDARDS OF LAW*

 Under Fed.R.Civ.P. 56, a plaintiff or defendant may bring a motion for summary judgment upon all or any part of a claim. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There can be no genuine issue of material fact if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party bears the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

 Initially, the moving party bears the burden of proving that there is no genu-

ine issue as to any material fact. *See* Fed. R.Civ.P. 56(c). Once the moving party has met this burden, the nonmoving party then must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether to grant summary judgment, the court must view the evidence presented in a light most favorable to the nonmoving party. *See, e.g., United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir.1988). However, the nonmoving party may not merely rest upon the allegations or denials of its pleadings. Fed.R.Civ.P. 56(e). If the nonmoving party fails to respond, then summary judgment if appropriate will be granted in favor of the moving party. *Id.*

## IV. *DISCUSSION*

### A. *Rights and Interests of Non–Debtor Spouse*

In California, there is a presumption that all property acquired during the marriage by married persons domiciled in the state is "community property." Cal. Fam.Code § 760. This presumption, however, is overcome when a declaration in a deed or other title instrument indicates spouses take title to property as joint tenants. *In re Rhoads*, 130 B.R. 565, 567 (Bankr.C.D.Cal. 1991); *accord In re Miles*, 35 B.R. 52 (Bankr. E.D.Cal.1983). When spouses take title to property as joint tenants, each holds his or her interest as separate property. *See* Cal. Fam.Code § 850; *Miles*, 35 B.R. at 53; *see also Marriage of Leversee*, 156 Cal.App.3d 891, 203 Cal.Rptr. 481 (1984). Because the joint tenancy interest is separate, a non-debtor spouse is entitled to one-half of the proceeds from the sale of the joint tenancy property. *In re Gorman*, 159 B.R. 543, 546 (Bankr. 9th Cir.1993); *see also* 4 B.E. Witkin, *Summary of California Law*, Real Property § 256 (9th ed. 1987).

Ljubica is not a debtor and claimed her one-half interest in the property as a joint tenant in her answer to the complaint. No evidence has been presented to contro-

vert her position, and she is therefore entitled to one-half of the **net** sales proceeds. *See Miles*, 35 B.R. at 54. However, Ljubica's interest in the joint tenancy property, while not subject to those judgment liens solely against her husband's interest, is still subject to any joint obligation liens. *See* Cal.Fam. Code §§ 913(a), (b)(2).

### B. *Priority of Liens in California Bankruptcy Cases*

Because the Bankruptcy Code does not set forth distribution rules for claims secured by the same collateral, the court must apply nonbankruptcy law to determine the priority of those liens in order to properly distribute proceeds from the sale of that collateral. *Pearlstein v. U.S. Small Business Admin.*, 719 F.2d 1169, 1175 (D.C.Cir.1983); *In re Darnell*, 834 F.2d 1263, 1266 (6th Cir.1987). If a federal tax lien is involved, federal law determines the priority of competing liens or claims. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960); *United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955); *accord In re Kimura*, 969 F.2d 806, 811 n. 1 (1992). Priority is primarily dictated by the recordation or perfection of liens against the property. 26 U.S.C. §§ 6321, 6323. Thus, in respect to real property collateral, a prior recorded lien is superior to a subsequently recorded tax lien.

However, where not inconsistent with the Bankruptcy Code, state law provisions concerning priority of liens should be preserved. *In re Patterson*, 139 B.R. 229, 231 (9th Cir. BAP 1992); *see also In re Van De Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir.1990) (bankruptcy court must refer to state law to determine relative priority of competing liens). The general rule in California holds that competing liens upon the same property have priority according to the time of their creation. Cal.Civ.Code § 2897. However, the general rule is subordinate to the rules of recordation. Regardless of the time the lien was created or transfer effectuated, California's recording statutes give priority to a bona fide purchaser or encumbrancer without notice whose

instrument is first recorded. Cal.Civ.Code §§ 1213–1215. Thus, a prior **unrecorded** lien is junior to a subsequent lien **recorded** by a bona fide encumbrancer for value. Nonetheless, an **unrecorded** mortgage or deed of trust prior in time takes precedence over a subsequently **recorded** judgment creditor, because a judgment creditor is not a bona fide purchaser. *Bank of Ukiah v. Petaluma Sav. Bank,* 100 Cal. 590, 591, 35 P. 170 (1893); *Livingston v. Rice,* 131 Cal.App.2d 1, 3, 280 P.2d 52 (1955).

### C. *Priority Between Plaintiff's Deed of Trust and Defendants' Judgment Liens*

Plaintiffs contend that their deed of trust is superior to the claims of Defendants because the 1987 deed of trust, although faulty, was **delivered** prior to recordation of the judgment liens and has priority because a judgment creditor is not a bona fide purchaser for value. Plaintiffs further contend that the 1988 deed of trust corrected the legal description of the property to be encumbered and reformed the 1987 deed of trust *nunc pro tunc.*

▮ To reform an agreement, the aggrieved party must show: 1) the true intent of the parties by clear and convincing evidence and that the error was a "mutual mistake" and 2) that reformation will not prejudice the rights acquired by bona fide purchasers. Cal.Civ.Code § 3399; *Shupe v. Nelson,* 254 Cal.App.2d 693, 62 Cal.Rptr. 352 (1967). If the above two-part test is satisfied, the court may reform a deed of trust *nunc pro tunc. See, e.g., Western Fed. Sav. & Loan Ass'n v. Heflin Corp.,* 797 F.Supp. 790, 793 (N.D.Cal.1992).

▮ In support of their contention, Plaintiffs offer a letter signed by Vicki Hunter, Branch Manager and Senior Escrow Officer of TA Title of Sacramento, and separate Escrow Instructions signed by Plaintiffs, both of which are dated October 29, 1987. Both documents indicate that the 1987 deed of trust mistakenly described the property to be encumbered and that the 1988 deed of trust was intended to correct the 1987 deed of trust. These documents also suggest that TA Title was responsible for the scrivener's

error. In addition, Plaintiffs offer a copy of the Instructions for Issuing Title Insurance, dated January 6, 1988, for the 1988 deed of trust, which again suggests that TA Title was responsible for the incorrect legal description contained on the 1987 deed of trust. Plaintiffs also offer a copy of the Instructions for Issuance of Title Insurance for the 1987 deed of trust, which shows that the property to be encumbered was 9440 Grant Line Road, Elk Grove, California. Finally, Plaintiffs offer a copy of the Lender's Instructions, dated August 11, 1987, which lists the property at 9440 Grant Line Road as the intended security. Each of the five documents offered by Plaintiffs refers to the same title escrow number (# 401735). Plaintiffs also presented an appraisal of the property at 9440 Grant Line Road, conducted July 30, 1987, prior to the execution of the note. Debtor's arguments in favor of his motion for summary judgment echo those of Plaintiffs. In support, Debtor offers, *inter alia,* copies of the 1987 deed of trust, dated August 14, 1987, and recorded August 24, 1987, and the 1988 deed of trust, dated August 14, 1987, and recorded January 7, 1987. Both of these documents give the Debtor's and Ljubica's address as 9440 Grant Line Road. All this evidence is compelling.

In opposition, Defendants argue that Plaintiffs have two security interests. According to Defendants, Debtor and Plaintiffs intended that the 1987 deed of trust would encumber the adjacent parcel, while the 1988 deed of trust was a separate security interest, encumbering the property at 9440 Grant Line Road. However, Defendants offer no credible evidence to support their contentions. Rather, Defendants merely rest on the allegations contained in their respective pleadings. Most importantly, the Defendants' unsupported contentions fail the common sense test. It is far more likely that the Debtor and Ljubica executed the new deed of trust to conform the earlier deed to the parties' real intentions, rather than to give Plaintiffs additional security. And the only logical reason for the Plaintiffs to obtain an appraisal of 9440 Grant Line Road was because that was the property they were rely-

ing on as the security for the loan of their money.

The second part of the reformation test—whether reformation will prejudice the rights of a bona fide purchaser—is less arduous. A judgment creditor is not a bona fide purchaser. *In re Mellor*, 734 F.2d 1396, 1401 (9th Cir.1984) (citing *20th Century Plumbing Co., Inc. v. Sfregola*, 126 Cal.App.3d 851, 854, 179 Cal.Rptr. 144 (1981)). Thus, whether reformation affects the rights of a judgment creditor is irrelevant. Defendants do not rebut this conclusion.

From the evidence presented and in the absence of adequate rebuttal to common sense implications from that evidence, the court finds that Plaintiffs and the Debtor and Ljubica intended to encumber the residence property and that the incorrect description on the 1987 deed of trust resulted from mutual mistake. Because Defendants are not bona fide purchasers for value, reformation will not cause undue prejudice. Therefore, the 1988 deed of trust recorded subsequent to Defendants' abstracts of judgment against the residence effectively reformed the faulty 1987 deed of trust *nunc pro tunc*. The court concludes that Plaintiffs' interest is superior to that of both Defendants and that there is no genuine issue of material fact as to Plaintiffs' priority.

### D. *Validity of the Debtor's Homestead Exemption*

The Bankruptcy Code provides uniform "exemptions" which shield certain types of a debtor's property from the claims of creditors, helping the debtor to obtain a "fresh start." *See* 11 U.S.C. § 522(d). Exemption laws protect a debtor's property against the enforcement of certain "nonconsensual" liens, such as money judgments or attachment liens. 2 CEB, *Debt Collection Practice in California* § 9.4 (1987); *see also* Cal.Code Civ.Proc. § 703.010.

Defendants Freeburger and Stojanovich contend that the homestead rights of the Debtor did not survive his death. However, the right to exemptions is determined by the facts as they existed on the bankruptcy petition filing date. *In re*

*Combs*, 166 B.R. 417, 418 (Bankr.N.D.Cal. 1994); *accord In re Peterson*, 897 F.2d 935, 937–38 (8th Cir.1990) (death of debtor "irrelevant" for purpose of determining right to homestead exemption); *In re Williamson*, 804 F.2d 1355, 1359 (5th Cir.1986) (exemptions determined as of date of original petition, despite subsequent conversion to Chapter 7); *In re Sivley*, 14 B.R. 905, 911 (Bankr. E.D.Tenn.1981) (right to exemption not affected by changes resulting from divorce). "[The date the petition is filed] is when the debtor's rights in exempt property are defined, despite a later change of circumstances." *In re Combs*, 101 B.R. 609, 614 (9th Cir. BAP 1989).

Although the Defendants dispute the **amount** claimed by the Debtor as exempt, absolutely no evidence has been presented which impugns the validity of the Debtor's right to a homestead, in at least the minimum amount, at the time the petition was filed or when the property was sold. Thus, the homestead exemption, being available on the date the petition was filed, "survived" the Debtor's death. *See In re Peterson, supra.* When the property was sold the claim of exemption was still valid. Since no part of the exemption claim was satisfied from the sales escrow, it, like the other unsatisfied interests or liens, retained its status against the funds, frozen in time, until final decision by this court.

### E. *Priority of Homestead over Judgment Liens*

When homestead property is sold, judicial lienholders are entitled to distribution only if the sales proceeds exceed the total of the senior consensual liens **and** the homestead exemption. *In re Galvan*, 110 B.R. 446 (9th Cir. BAP 1990); *In re Patterson*, 139 B.R. 229 (9th Cir. BAP 1992). In this sense, judgment liens can never "impair" homestead exemptions, because debtors receive the full amount of their homestead exemptions **before** judicial lienors are paid. *See In re Chabot*, 992 F.2d 891 (9th Cir.1993).

The minimum homestead exemption available to the Debtor in 1992 was $50,000. *See* Cal.Code Civ.Proc. § 704.730(a)(1). The Debtor would have

been entitled to at least that sum before the judgment lien creditors were paid. Since, as pointed out in Part A above, Ljubica is entitled to one-half of the remaining net proceeds of $85,000, only $42,500 is available as the Debtor's share. That sum is clearly insufficient to satisfy the Plaintiff's senior lien and the Debtor's minimum homestead of $50,000, much less leave any nonexempt proceeds available to pay judgment liens. Therefore, the Defendant judgment creditors of the Debtor are reduced to the status of unsecured creditors.

## F. *Priority of Federal Tax Liens*

As stated above, exemption laws do not protect property from enforcement of **consensual** liens, Cal.Code Civ.Proc. § 703.010, or **federal tax liens.** 11 U.S.C. §§ 522(c)(1), 522(c)(2)(B); *Leuschner v. First Western Bank & Trust Co.,* 261 F.2d 705, 708 (9th Cir.1958); *United States v. Heffron,* 158 F.2d 657 (9th Cir.1947). Therefore, even though the Debtor is able to protect his homestead proceeds from judgment lien creditors, he loses it as against federal tax liens. What this means as a practical matter is that, because of the Debtor's homestead, the tax liens are paid even though the senior judgment liens are not.

## G. *Final Distribution of Remaining Proceeds*

As explained above, Ljubica is entitled to one half of the net proceeds from the sale of her former residence. In respect to her share, the order of distribution among the competing secured claims is as follows: first, Plaintiff's consensual deed of trust, for which she is jointly liable; second, the IRS liens, for which she is also jointly liable, and third, the RCA lien, which is the only judgment lien wherein she is a judgment debtor [2].

In respect to the Debtor's share of the proceeds, the order of distribution among the competing claims is as follows: first, Plaintiffs' consensual deed of trust, which is prior in time to the Defendants' judicial liens;

and second, the Internal Revenue Service's tax liens, which are enforceable against the homestead exemption. The remaining balance of the Debtor's share represents what's left of his homestead exemption claim, and should be retained by the Chapter 13 Trustee to distribute to creditors in accordance with the provisions of his Chapter 13 Plan.

## V. *CONCLUSION*

The final matter that needs to be resolved before the amounts due to each claimant can be computed is the treatment of interest. Clearly, interest should be added to each claim at the appropriate rate (contract or legal) until the date the petition was filed. *See* 11 U.S.C. § 502(b)(2). Over secured claims would thereafter be entitled to add interest at the appropriate rate until the close of escrow. *See* 11 U.S.C. § 506(b). The amounts thus found due in accordance with this decision should be frozen, since they would have been paid at that time if their priority had been determined. The interest earned on the blocked proceeds should then be prorated among the claimants according to the respective amounts found to be owing to them.

From the foregoing analysis, the proceeds from the sale of the real property located at 9440 Grant Line Road, Elk Grove, California, (approximately $84,748.00) currently held by the Chapter 13 Trustee, should be distributed in the following steps:

1. Plaintiffs' claim should be paid in full.

2. The IRS liens should be paid in full.

3. The remaining balance should be divided into the Debtor's share and Ljubica's share.

4. RCA's claim should be paid from Ljubica's share.

5. Any funds remaining from Ljubica's share should be paid to her, and any remaining funds from the Debtor's share should be retained by the Chapter 13 Trustee to be disbursed in accordance with the terms of

---

2. Although the recordation of the RCA abstract of judgment may have violated the automatic stay as against the Debtor, Ljubica was not in bankruptcy, and a lien was properly created against her interest in the property. Since only one spouse at a time may claim a homestead, her interest was not subject to a homestead exemption.

the Debtor's confirmed Chapter 13 Plan. The foregoing constitute this court's findings of fact and conclusions of law. An appropriate order will issue.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

The separate motions of Defendants John Pavich and the Internal Revenue Service for summary judgment came on for hearing on November 15, 1994. For reasons set forth in the accompanying Memorandum of Decision filed thereon,

IT IS HEREBY ORDERED that the motions for summary judgment of Debtor and Defendant John Pavich, Plaintiffs Leslie and Elaine Bernstein, and Defendant Internal Revenue Service are GRANTED.

IT IS FURTHER ORDERED that the Plaintiffs, Internal Revenue Service, and Retail Creditors Association shall compute the balance due to them as of close of escrow on the sale of the real property at 9440 Grant Line Road, Elk Grove, California. The computation shall set forth the interest rate calculations, and the dates and amounts of any payments on account. The computation worksheets shall be filed with the court and served on the other parties on or before January 17, 1996. A hearing will be held on January 22, 1996 at 10:00 a.m. in Department A to finally fix the distribution of the remaining sales proceeds of the subject property.