Filed 4/3/14  Hernandez v. Kieferle CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

FLORENTINA HERNANDEZ et al.,

     Plaintiffs and Respondents,

v.

PATRICIA CLAUDINE KIEFERLE, as Trustee, etc.

     Defendant and Appellant.

B243909

(Los Angeles County
Super. Ct. No. BP111578)

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Daniel J. Koes for Defendant and Appellant Patricia Claudine Kieferle.

Wilson, Wilson & Perrizo and Daniel J. Wilson for Plaintiff and Respondent Florentina Hernandez.

Law Offices of Jeffrey A. Coleman and Jeffrey A. Coleman for Plaintiff and Respondent Emigdio Hernandez.

This is the second time the underlying action has come before us. Prior to the first appeal, the probate court invalidated an amendment to a trust that made appellant Patricia Claudine Kieferle trustee and sole beneficiary of the trust estate. The probate court ruled that the amendment failed under Probate Code section 21351, subdivision (d), which establishes a rebuttable presumption that specified testamentary transfers to "care custodians" were the product of fraud, duress, menace or undue influence. In *Hernandez v. Kieferle* (2011) 200 Cal.App.4th 419 (*Hernandez I*), we reversed the probate court's orders, concluding that the court should have applied the exception to the presumption for transferees "related by blood or marriage" to the transferor (Prob. Code, § 21351, subd. (a)).

Following our decision, the probate court rejected appellant's request for an award of attorney fees and costs under Probate Code section 21351, subdivision (d), and Code of Civil Procedure section 2033.420. We conclude that the court properly denied an award of fees and costs under those statutes, and thus affirm.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Because the probate court's rulings on appellant's request for an award of fees and costs hinge on its findings regarding the amendment to the trust, we summarize the proceedings preceding the first appeal, as set forth in our decision.[1]

A. *First and Second Amendments to Gertrude G. Kieferle's 2004 Trust*

Gertrude G. Kieferle was born in 1920. Appellant Patricia Claudine Kieferle (Claudine) is Gertrude's step-daughter by Gertrude's marriage to Eugene J.

---

[1] At appellant's request, we take judicial notice of the record in *Hernandez I*.

2

Kieferle.[2]  Although Eugene had several daughters, including Claudine, Gertrude had no children of her own.  In 1994, respondents Florentina Hernandez and Emigdio Hernandez became Gertrude's and Eugene's next-door neighbors.  The following year, Claudine moved to Alaska.  After Eugene died in 1997, Claudine had little contact with Gertrude from 1998 to 2004.

In June 2004, Gertrude executed a will and established the pertinent trust.  The will transferred Gertrude's estate to the trust.  Under the original terms of the trust, upon Gertrude's death, Florentina Hernandez was to receive $10,000 from Gertrude's estate, but no property was to be distributed to Claudine.  In August 2004, Gertrude amended the trust to name the Hernandezes as the trustees upon her death and as principal beneficiaries of the trust estate (first amendment).[3]

On February 15, 2008, shortly after Claudine began a visit with Gertrude, Gertrude executed a new will and again amended the 2004 trust (second amendment).  The will revoked all previous wills, bequeathed Gertrude's estate to the trust, and named Claudine as her executor.  The second amendment to the trust revoked the key provisions of the first amendment, substituted Claudine for the Hernandezes as trustee upon Gertrude's death, and made Claudine the sole beneficiary of the trust estate.  On May 27, 2008, Gertrude died.

B.  *Underlying Proceedings*

1.  *Petitions*

On July 10, 2008, Claudine filed a petition as trustee, seeking an order

---

[2]     As the pertinent members of the Kieferle family share a surname, we henceforth refer to them by their first name.  Because appellant ordinarily calls herself "Claudine," we apply this name to her.

[3]     Under the first amendment, the only other beneficiaries were two of Gertrude's friends, each of whom was to receive $5,000.

3

confirming as trust assets a bank account, a car, and Gertrude's personal effects. On August 29, 2008, the Hernandezes, asserting their status as trustees and beneficiaries under the first amendment, filed a petition challenging the second amendment. Their petition alleged that Gertrude lacked the mental capacity to execute the second amendment, and that the second amendment was the product of "fraud, misrepresentation, elder abuse, and undue influence." The Hernandezes requested an order confirming their status as trustees, invalidating the second amendment, and directing an accounting. In response, Claudine filed a motion to dismiss the Hernandezes' petition, contending that they lacked standing to submit a petition or otherwise intervene in the action. Claudine maintained that the first amendment failed under the care custodian presumption (Prob. Code, § 21351, subd. (d)).

### 2. *Post-Trial Rulings and Appeal*

Judge Reva G. Goetz conducted a bench trial on the Hernandezes' petition.[4] On May 21, 2010, Judge Goetz issued a proposed statement of decision containing tentative findings and rulings. The court found that Claudine had a lengthy and strong relationship with Gertrude; that Claudine knew nothing regarding Gertrude's various estate plans; that she did not know that Gertrude intended to change her estate plan in 2008; and that the 2008 changes did not unduly benefit Claudine. The court concluded that the second amendment was not the product of undue influence by Claudine under the common law doctrine of undue influence. Although the Hernandezes did not contend at trial that Claudine had been

---

[4] During the trial, the Hernandezes filed a second petition, requesting the probate court to assume jurisdiction over the trust and order Claudine to post a $485,000 bond while she served as trustee.

4

Gertrude's care custodian, Judge Goetz's proposed decision expressly found that Claudine "was not in a confidential relationship with Gertrude such that she would be defined as a caregiver or other disqualified person under Probate Code § 21350." In view of these tentative findings, Judge Goetz stated her intent to deny the Hernandezes' petition to invalidate the second amendment. Both sides raised numerous objections to the proposed statement of decision.

Later, at a hearing on August 5, 2010, Judge Goetz stated that she had failed to fully consider whether Claudine was Gertrude's "caregiver" within the meaning of Probate Code section 21350. On August 16, 2010, Judge Goetz issued her final statement of decision. Many of her findings remained unchanged, including the determinations that Gertrude had testamentary capacity when she executed the second amendment and will, that Gertrude was not under duress, and that she appeared to understand the documents when she signed them. The court further found no evidence that Claudine had "actively procure[d]" the second amendment for purposes of the common law doctrine of undue influence. However, Judge Goetz found that Claudine was a care custodian under Probate Code section 21350 when Gertrude executed the 2008 documents, and that Claudine had failed to rebut by clear and convincing evidence the statutory presumption that the transfer to her was the product of undue influence. Judge Goetz further found that Florentina Hernandez was not Gertrude's "caregiver" when Gertrude established the 2004 trust and executed the first amendment.

In view of these findings, Judge Goetz entered orders declaring the second amendment invalid, confirming the Hernandezes as Gertrude's successor trustees,

directing an accounting, and barring Claudine from transferring estate assets.[5] Claudine noticed an appeal from those orders.

On appeal, Claudine contended (1) that the probate court erred in applying the care custodian presumption to her, (2) that the Hernandezes lacked standing to assert their petitions, and (3) that the probate court was biased against her. (*Hernandez I*, *supra*, 200 Cal.App.4th at p. 431.) Regarding the Hernandezes' standing, Claudine maintained that the first amendment was invalid under the care custodian presumption established in Probate Code section 21351, subdivision (d). She argued that because Florentina Hernandez was Gertrude's care custodian in 2004, the Hernandezes were obliged to rebut the presumption, which they failed to do.

In our decision, we concluded that the court erred in invalidating the second amendment, as Claudine fell within an exception to the care custodian presumption as an heir of Gertrude related by blood or marriage. (*Hernandez I*, *supra*, 200 Cal.App.4th at pp. 431-437.) We therefore reversed the probate court's orders invalidating the second amendment and confirming the first amendment, as the probate court's findings precluded any other basis to affirm the orders. (*Id*. at p. 437.) Because the second amendment, as a valid amendment to the trust, necessarily superseded the first amendment, we did not address Claudine's contention that the Hernandezes lacked standing to assert their petitions, and characterized that contention as "moot." (*Id*. at p. 431.) We also found no judicial bias. (*Id*. at pp. 437-441.)

---

[5] The court also granted the relief sought in the Hernandezes' second petition (see fn. 4, *ante*), and found it unnecessary to rule on Claudine's motion to dismiss the Hernandezes' petition to invalidate the second amendment.

3. *Claudine's Request for an Award of Attorney Fees and Litigation Expenses*

Following our remittitur, the matter was reassigned to Judge Mitchell L. Beckloff. Claudine filed a request for an award of attorney fees and costs pursuant to Probate Code section 21351, subdivision (d), or in the alternative, Code of Civil Procedure section 2033.420. Claudine sought an award of $1,068,749.93 under the former statute, and an award of $969,491.08 under the latter statute. On March 22, 2012, following a hearing, Judge Beckloff denied the request in its entirety. This appeal followed.

## DISCUSSION

Claudine contends the probate court erred in denying her request for attorney fees and costs under Probate Code section 21351, subdivision (d), and Code of Civil Procedure section 2033.420. For the reasons discussed below, we disagree.[6]

A. *Probate Code Section 21351, Subdivision (d)*

We begin with Claudine's request for an award pursuant to subdivision (d) of Probate Code section 21351. She argues that she is entitled to an award because the Hernandezes were ineligible for a donative transfer from Gertrude under that subdivision. She thus raises the contention that we declined to resolve in *Hernandez I*, although it is presented here in connection with a request for an

---

[6] Claudine's opening brief also contends the probate court incorrectly failed to award her trial court costs totaling $14,011.15. As the brief offers no argument (with citation to appropriate legal authorities) to support that contention, Claudine has forfeited it. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1; *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 844, fn.3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)

award of fees and costs, rather than as a challenge to the Hernandezes' standing. As explained below, we reject the contention.[7]

### 1. *Statutory Scheme*

In addition to establishing the rebuttable presumption at issue in *Hernandez I*, subdivision (d) of Probate Code section 21351 authorizes an award of attorney fees and costs in specified circumstances. Generally, Probate Code section 21350 "lists seven categories of persons who cannot validly be recipients of such donative transfers . . . ." (*Bernard v. Foley* (2006) 39 Cal.4th 794, 799 (*Bernard*).) Those categories include "[a] care custodian of a dependent adult who is the transferor," and anyone related by blood or marriage to such a "care custodian." (Prob. Code, § 21350, subd. (a)(6) & (7).) Once it is determined that a transferee falls within one of those categories, subdivision (d) of Probate Code section 21351 creates a rebuttable presumption that the transfer resulted from fraud, duress, menace, or undue influence. (*Bernard*, *supra*, 39 Cal.4th at p. 799.) "To rebut that presumption, "'the transferee must present clear and convincing evidence, which does not include his or her own testimony, that the transfer was not the product of fraud, duress, menace, or undue influence.'" (*Id.* at p. 800, quoting *Estate of*

---

[7]    The Hernandezes suggest that Claudine's contention is barred under the doctrine of the law of the case, in view of our determination in *Hernandez I* that the contention was moot. We disagree. The doctrine of the law of the case, which governs the effect of an appellate opinion on a subsequent retrial or appeal, provides that "[t]he decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (9 Witkin, Cal. Procedure, *supra,* Appeal, § 459, p. 515.) Here, the doctrine is inapplicable because we did not decide Claudine's contention in the first appeal. Even if it were, as our Supreme Court has explained, the doctrine is flexible, and may yield when its application would result in substantial
*(Fn. continued on next page.)*

8

*Shinkle* (2002) 97 Cal.App.4th 990, 993, disapproved on another point in *Bernard*, *supra*, at p. 816, fn. 14.) If the transferee fails to rebut the presumption, the transferee is a "disqualified person" who may not receive property under the donative transfer. (Prob. Code, § 21350.5.)[8]

Subdivision (d) of Probate Code section 21351 further states: "If the court finds that the transfer was the product of fraud, menace, duress, or undue influence, the disqualified person shall bear all costs of the proceeding, including reasonable attorney's fees." As noted in *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 318, that provision authorizes a potentially "substantial" award of costs and attorney fees.

### 2. *Underlying Proceedings*

In seeking an award under subdivision (d) of Probate Code section 21351, Claudine contended the Hernandezes were disqualified persons under Probate Code sections 21350 and 21351. She argued that the "unimpeached" evidence presented at the bench trial established that Florentina Hernandez was Gertrude's care custodian in 2004, and thus triggered the presumption in subdivision (d) of Probate Code section 21351, which the Hernandezes failed to rebut.

In denying the request, the probate court concluded that subdivision (d) of Probate Code section 21351 was inapplicable, as it provides for an award only

---

injustice. (*Searle v. Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434-435.) Under the circumstances of this case, it is appropriate to address the contention.

[8] Probate Code section 21355 provides that the statutory scheme in question applies only to instruments that became irrevocable between September 1, 1993 and January 1, 2011, and that the scheme remained in effect only to January 1, 2014. In 2010, the Legislature enacted Probate Code section 21360 et seq., which implements a revised form of the presumption for instruments that became irrevocable on or after January 1, 2011 (Stats. 2010, ch. 620, § 7).

when a transferee fails to rebut the presumption established in it.  As the court noted, the first amendment was never invalidated on that basis:  Judge Goetz found that Florentina Hernandez was not Gertude's "caregiver" in 2004, and in *Hernandez I*, we concluded the first amendment was ineffective because it was superseded by the second amendment.  The court also observed that Judge Goetz was entitled to credit Hernandez's testimony that she provided no substantial care to Gertrude in 2004, despite Claudine's evidence challenging that testimony.

### 3.  *Claudine's Contention*

Claudine maintains that she is entitled to an award under subdivision (d) of Probate Code section 21351 because the evidence at the bench trial compelled a finding that the Hernandezes were disqualified persons under that subdivision.  We disagree.  An essential predicate for any such award was a finding that Florentina Hernandez was Gertrude's care custodian in 2004, when Gertrude executed the original trust and first amendment.  However, Judge Goetz found that Florentina Hernandez was not Gertrude's care custodian in 2004.  Because there was substantial evidence to support that finding, we conclude the probate court did not err in rejecting Claudine's request for an award.[9]

### a.  *"Care Custodian"*

A person who provides care or services to a dependent adult may qualify as a "care custodian" under subdivision (a)(6) of Probate Code section 21351.

---

[9]     In view of our conclusion, it is unnecessary to examine whether the probate court's ruling was correct on any other basis.  (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 [on appeal, trial court's ruling is properly affirmed on any ground established in the record].)

(*Bernard*, *supra*, 39 Cal.4th at p. 794.)  That category of transferee encompasses "'paid live-in caregiver[s].'"  (*Estate of Odian* (2006) 145 Cal.App.4th 152, 167.)  In addition, it may apply to persons who provide care or services as the result of a pre-existing personal relationship.  In *Bernard*, our Supreme Court held that two friends of a dependent adult who housed her, prepared meals for her, and attended to her medical and financial affairs were "care custodians" at the time she executed donative transfers to them (39 Cal.4th at p. 805).  In so concluding, the court stated that when the transfers were made, the friends "provided substantial, ongoing health services to [the dependent adult] while, at the end of her life, she was residing in their home . . . ."  (*Ibid.*)

In contrast, a person who provides incidental or insubstantial services or care to a dependent adult is not a "care custodian[]."  In *Estate of Austin* (2010) 188 Cal.App.4th 512, 519 (*Austin*), a neighbor of a dependent adult provided him limited care, consisting of driving him to the doctor, preparing some of his meals, and occasionally "helping out."  The appellate court concluded that these services did not render the neighbor a care custodian, reasoning that they "could not reasonably be characterized as substantial, ongoing health services or social services."  (*Id.* at pp. 519-520.)

b.  *Judge Goetz's Findings*

The pertinent donative transfers to the Hernandezes were executed in 2004.  In June 2004, Gertrude established the trust, whose original terms provided for a $10,000 gift to Florentina Hernandez upon Gertrude's death.  In August 2004, Gertrude executed the first amendment, which named the Hernandezes the trustees upon her death and made them the principal beneficiaries of the trust estate.

11

Following the bench trial, Judge Goetz determined that in 2004, Florentina Hernandez was not Gertrude's "caretaker." In support of this determination, Judge Goetz made the following findings: "1) [Hernandez] did not take care of Gertrude on weekends or do Gertrude's banking or get medicine on a regular basis. [¶] 2) [Hernandez] helped Gertrude clean up after her dog, Penny. [¶] 3) Occasionally [Hernandez] would bring food from [certain restaurants] if she was going there to pick up food for her family. [¶] 4) Gertrude still drove. [Hernandez] did not take Gertrude to the doctor or hospital. [¶] 5) Gertrude was hospitalized from May to August 2004 after a fall in late May 2004. [Hernandez] visited Gertrude in the hospital two to three times a week. [Hernandez] did not help Gertrude with her banking or provide care for her. [¶] 6) Gertrude returned to her residence in late July 2004. She had a care[]taker named Maria."

c. *Analysis*

In view of *Austin*, Judge Goetz's findings, if adequately supported by the evidence, establish that Hernandez was not Gertrude's care custodian when the trust and the first amendment were executed. The focus of our inquiry, therefore, is whether there was sufficient evidence to support the findings.

Generally, factual findings are examined for the existence of substantial evidence. (*Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 700.) On review for substantial evidence, "'[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" (*Daly v. Wallace*

(1965) 234 Cal.App.2d 689, 692, italics deleted, quoting *People v. Huston* (1943) 21 Cal.2d 690, 693.)[10]

Here, Judge Goetz's findings closely track Florentina Hernandez's testimony.[11]  Hernandez stated that in 2004, she was a neighbor and close friend of Gertrude, but not her caregiver.  According to Hernandez, Gertrude then lived in her own home, and drove a car.  Hernandez provided no banking or financial services to Gertrude; did not bathe or feed her; did not buy medications for her; and did not care for her on weekends.  Hernandez helped Gertrude with her dog, and occasionally brought Gertrude food from restaurants.  In May or June 2004, a fall injured Gertrude, who then moved temporarily to a nursing home.  Hernandez visited Gertrude two or three times a week in the nursing home, but provided no care to her.  When Gertrude returned home in late July 2004, she hired a caregiver to assist her.

Claudine contends Hernandez's testimony was conclusively discredited by other evidence, including evidence from Hernandez herself.  As Claudine notes, during cross-examination, Hernandez acknowledged that in 2004, she had a key to Gertrude's house.  Furthermore, in cross-examining Hernandez, Claudine's counsel submitted an excerpt from Hernandez's deposition.  During the deposition, Hernandez was questioned regarding services she had provided to Gertrude from

---

[10]     Upon review for substantial evidence, we do not reweigh the evidence.  (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1650.)  Rather, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact], and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the [trier of fact]."  (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics deleted.)

[11]     Emigdio Hernandez did not appear as a witness during the bench trial.

13

"at least 2003 forward," including shopping for food, obtaining medicine, going to the bank, preparing meals, doing laundry, and changing Gertrude's clothes. At the deposition, Hernandez answered, "It is just the same thing I do at home." Later, during Hernandez's re-direct examination at the bench trial, she explained that she did not fully understand the question directed to her, and that her answer reflected services that she provided primarily in 2007.[12]

Claudine also points to evidence from other witnesses. Susan Bernatz, a psychologist who testified on behalf of Hernandezes, acknowledged that during her own deposition, she stated that the Hernandezes were Gertrude's caregivers in May 2004. Keila Carillo, who began working for Gertrude as a paid caregiver in August 2004, testified that Hernandez brought Gertrude food and sometimes made short visits on weekends. Shirley Wise, who lived near Gertrude, testified that after Gertrude's husband died in 1997, she and her husband helped Gertrude in many ways. According to Wise, in May 2004, an incident estranged the Wises from Gertrude, and the Hernandezes took over helping her. Wise also acknowledged that after the incident, Gertrude revoked a prior trust that named the Wises as trustees, and established the trust pertinent here.

The evidence upon which Claudine relies did not conclusively discredit Hernandez's testimony. As our Supreme Court explained in *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878, even internally inconsistent testimony from a single witness may support a judgment. "It is for the trier of fact to consider internal inconsistencies in testimony, to resolve them if this is possible, and to determine what weight should be given to such testimony." (*Ibid*.)

---

[12]    Claudine also points to testimony from Hernandez establishing that she wrote checks for Gertrude, and had other financial dealings with her. However, that testimony relates to events that occurred after 2004.

Furthermore, "[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions. [Citations.]" (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366, fn. omitted.) We reject the statements of a witness that the factfinder has believed only if they are "'inherently improbable,'" that is, "physically impossible or obviously false without resorting to inference or deduction." (*Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1293; see *Daly v. Wallace*, *supra*, 234 Cal.App.2d at p. 692.) Here, Hernandez's testimony was neither physically impossible nor obviously false on its face.

Because there was substantial evidence to support Judge Goetz's finding that Hernandez was not Gertrude's care custodian, the record does not mandate the contrary finding. Accordingly, the probate court did not err in rejecting Claudine's request for an award under subdivision (d) of Probate Code section 21351.[13]

---

[13]   In an apparent effort to support the award Claudine requested under that provision, she contends the Hernandezes unnecessarily compelled her to incur those expenses because they had "no possible pecuniary interest" in Gertrude's estate. Claudine argues that the Hernandezes' only potential interest in the estate was predicated on the first amendment, which was invalid because Florentina Hernandez was Gertrude's care custodian in 2004. She further argues that even if -- as the probate court initially found -- the transfer to Claudine in the second amendment were invalid under subdivision (d) of Probate Code section 21351, the provision of the second amendment revoking the first amendment remained valid. Claudine thus maintains that the Hernandezes could not have been "interested person[s]," that is, they lacked standing to contest the second amendment. (*Estate of Lane* (1970) 7 Cal.App.3d 402, 405; Prob. Code, § 1043, subd. (a).)

Claudine's contention fails insofar as it is offered to establish an entitlement to a fee award under subdivision (d) of Probate Code section 21351. Under that statute, the propriety of an award hinges exclusively on whether Florentina Hernandez was Gertrude's caregiver in 2004. As explained above, there is sufficient evidence to support the probate court's finding that she was not then Gertrude's caregiver.

Furthermore, we reject Claudine's contention that the Hernandezes lacked standing to file a petition challenging the second amendment. To establish standing to
*(Fn. continued on next page.)*

15

B.  *Code of Civil Procedure Section 2033.420*

We turn to Claudine's contention that the probate court erred in denying her request for an award of attorney fees and costs under Code of Civil Procedure section 2033.420.

1.  *Governing Principles*

Subdivision (a) of Code of Civil Procedure section 2033.420 states: "If a party fails to admit . . . the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." Subdivision (b) of the statute further provides that the court "shall" order an award unless it finds the existence of specified circumstances, including that "[t]he admission sought was of no substantial importance," or that "[t]he party failing to make the admission had reasonable ground to believe that that party would prevail on the matter."[14]

challenge a will or trust, the contestant is required only to make a prima facie showing of an interest in the estate under some testamentary instrument, and need not demonstrate the validity of that instrument.  (*Estate of Plaut* (1945) 27 Cal.2d 424, 428.)  As we elaborate below (see pt. B.3., *post*), the Hernandezes' petition sought to invalidate the second amendment in its entirety, as they alleged both that Gertrude lacked capacity to execute the second amendment, and that she was the victim of Claudine's undue influence.  A prima facie showing was made that the Hernandezes had standing to contest the second amendment on the basis of that theory, as the existence and terms of the first amendment were undisputed.

[14]     Subdivision (b) of Code of Civil Procedure section 2033.420 states: "The court shall make [the] order unless it finds any of the following:  [¶]  (1) An objection to the request was sustained or a response to it was waived under Section 2033.290.  [¶] (2) The
*(Fn. continued on next page.)*

16

As explained in *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 508-512 (*Brooks*), in ruling on a request for an award under the statute, the trial court may consider several factors. Those factors include whether the admissions sought concerned matters "'of substantial importance,'" and "whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that [it] would prevail on the issue at trial." (*Id*. at pp. 509, 511, italics deleted.)

On appeal, the trial court's determination regarding that matter is examined for an abuse of discretion. (*Brooks*, *supra*, 179 Cal.App.3d at p. 512.) Under that standard of review, "[t]he trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice." (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545.)

---

admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."

## 2. *Parties' Showings*

Here, Claudine's request for an award was predicated on the Hernandezes' rejection of requests for admission that Claudine propounded in April 2009. The requests asked the Hernandezes to admit that Claudine was the lawful trustee under the second amendment; that Gertrude was legally competent and acted of her own free will when she executed the second amendment; that Claudine did not exercise undue influence over Gertrude, defraud her, take improper advantage of her, or engage in elder abuse regarding her; and that the second amendment extinguished the Hernandezes' rights to the trust estate. The Hernandezes responded with denials to the requested admissions.

Before the probate court, Claudine maintained that the evidence available to the Hernandezes when the requests were propounded conclusively established that their responses were not made in good faith. She relied primarily on the evidence presented at the bench trial and Judge Goetz's findings. On appeal, Claudine places special emphasis on the trial evidence we have already described (see pt. A.3., *ante*). In addition, she notes that at trial, evidence was presented that shortly before Gertrude executed the second amendment, the Hernandezes took Gertrude to the office of attorney Blanca Pacheco, where Gertrude discussed the possibility of executing a power of attorney enabling the Hernandezes to make medical decisions for her. Claudine further points to Judge Goetz's finding that Claudine did not exercise undue influence over Gertrude when she executed the second amendment in February 2008.

Claudine also relied on declarations from Cesar Macedo and Dr. Hung Nguyen, which she provided to the Hernandezes in October 2008, before the Hernandezes responded to her requests for admission. Macedo, a financial consultant, stated that he had known Gertrude for several years and was present in

18

her house when she executed the second amendment. According to Macedo, although Claudine was also in the house, she was not in the room where Gertrude executed the second amendment. Macedo further stated that Gertrude appeared to understand the document and did not act under duress, menace, fraud, or undue influence. Dr. Nguyen stated that he had treated Gertrude from October 2007 to May 2008, when she died. He opined that she was fully capable of making decisions, but acknowledged that she suffered from "mild" dementia.

In opposing the request for the award before the probate court, the Hernandezes contended that their responses to Claudine's requests for admission reflected the requisite good faith. In addition to submitting Judge Goetz's statement of decision, they submitted two medical reports regarding Gertrude prepared by Dr. Nguyen. The first was prepared in October 2007 and assessed Gertrude as suffering from "[s]evere dementia." The second was prepared in February 2008 following Gertrude's hospitalization, which ended four days before she executed the second amendment; it listed "[d]ementia" among her admitting and final diagnoses. The Hernandezes also submitted letters prepared in March 2008 by Dr. Nguyen and another treating physician, Dr. Cheng-Robles, each opining that Gertrude was no longer capable of making health care decisions for herself. The Hernandezes further observed that after they responded to Claudine's requests for admission, their experts opined that Gertrude was susceptible to undue influence when she executed the second amendment.


3. *Analysis*

We conclude that the probate court did not err in rejecting Claudine's request for an award, as the evidence before the court was sufficient to show that the Hernandezes had a good faith belief they would prevail on their petition when

19

they rejected Claudine's requests for admission. The Hernandezes' petition alleged that Gertrude lacked the capacity to execute the second amendment, and that she was the victim of Claudine's fraud, misrepresentation, elder abuse, or undue influence. The petition specifically alleged that Gertrude was estranged from Claudine; that throughout her life, Gertrude had limited contact with Claudine until Gertrude's final months, when Claudine traveled from Alaska and took up residence in Gertrude's house; and that Gertrude executed the second amendment shortly after Claudine began living with her.

Because Judge Goetz's statement of decision focused on the petition's allegations regarding Gertrude's capacity to execute the second amendment and Claudine's exercise of undue influence, the probate court could properly have concluded that only the requests for admission related to those allegations were "of substantial importance." (*Brooks*, *supra*, 179 Cal.App.3d at p. 509.) As explained below, there was sufficient evidence before the probate court to establish the Hernandezes' good faith belief that they would prevail regarding those allegations when they rejected Claudine's requests for admission. (*Id*. at p. 511.)

The reports and letters from Gertrude's doctors in the Hernandezes' possession constituted an adequate basis for the probate court to conclude that they had a good faith belief regarding Gertrude's lack of capacity and susceptibility to undue influence, notwithstanding Dr. Nguyen's declaration. Indeed, that declaration appears to conflict with Dr. Nguyen's own earlier medical reports and letter regarding Gertrude's capacity to make medical decisions. The evidence that upon Gertrude's release from the hospital in February 2008 (four days before she executed the second amendment), she was suffering from dementia, coupled with the reports of two treating doctors the following month that she lacked capacity to make health care decisions, supported the court's finding that the Hernandezes

20

harbored a good faith belief that Gertrude lacked testamentary capacity when she executed the second amendment. At the bench trial, Florentina Hernandez testified that she arranged Gertrude's visit with attorney Pacheco because Gertrude wanted a power of attorney to authorize the Hernandezes to make medical decisions for her and pay her bills, and that Gertrude never executed a power of attorney because she became seriously ill. In view of that testimony, the probate court was not required to find that the Hernandezes acted in bad faith in denying that Gertrude had the capacity to execute the second amendment.

The evidence before the probate court was also sufficient to show the Hernandezes had a good faith belief that they would prevail with respect to Claudine's alleged undue influence. Generally, undue influence may be proved by circumstantial evidence. (*David v. Hermann* (2005) 129 Cal.App.4th 672, 684.) "The proof of undue influence by circumstantial evidence usually requires a showing of a number of factors that, in combination, justify the inference, but which, taken individually and alone, are not sufficient." (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 132, p. 195.) The factors include: "(1) The provisions of the will were unnatural. . . . ; (2) the dispositions of the will were at variance with the intentions of the decedent, expressed both before and after its execution; (3) the relations existing between the chief beneficiaries and the decedent afforded to the former an opportunity to control the testamentary act; (4) the decedent's mental and physical condition was such as to permit a subversion of his freedom of will; and (5) the chief beneficiaries under the will were active in procuring the instrument to be executed." (*Estate of Yale* (1931) 214 Cal. 115, 122.)

At trial, Florentina Hernandez testified regarding the existence of several of those factors. According to Hernandez, Gertrude often said that she hated her late

husband Eugene's children. In 2005 or 2006, when Gertrude received a postcard from Claudine, she was surprised, and said to Hernandez, "I wonder why she's writing. I wonder what she wants." Hernandez first saw Claudine in Gertrude's company in June 2007, when Claudine visited Gertrude. In February 2008, shortly before Gertrude executed the second amendment, Claudine spent time in Gertrude's home.

In our view, Hernandez's testimony, coupled with the reports and letters from Gertrude's doctors, was sufficient to show that the Hernandezes denied Claudine's requests for admission with the requisite good faith. Furthermore, their possession of Macedo's declaration did not require a finding that they made the denials in bad faith. Generally, a party can exert undue influence over the making of a testamentary instrument without being present when it is executed. (*Estate of Pohlmann* (1949) 89 Cal.App.2d 563, 576-581 [evidence established that son exercised undue influence over mother's will, even though son and mother lived in different countries when the will was executed].) Although Macedo saw no exercise of undue influence when Gertrude executed the second amendment, he was not present when Gertrude decided to make that amendment, and offered no evidence regarding whether Claudine exercised undue influence regarding Gertrude's decision.[15]

Claudine contends the probate court's remarks at the hearing on her request demonstrated that it misconstrued Code of Civil Procedure section 2033.420, or misapprehended the scope of its discretion. During the hearing, the court stated

---

[15] For similar reasons, we reject Claudine's contention that the Hernandezes necessarily denied Claudine's requests for admission in bad faith because Gertrude was "surrounded by caregivers" immediately before she executed the second amendment. As Judge Goetz noted, during that period, Claudine was the caregiver who "spent the most time in the proximity of Gertrude . . . ."

that there did not appear to be evidence that "the Hernandezes didn't believe their position." The court then posed what it described as a question of "public policy" to Claudine's counsel. Noting that Claudine's requests for admission related to "ultimate issues in the case," the court asked counsel whether he would have sought summary judgment on the Hernandezes' petition if they had made the admissions. In response, counsel argued that under *Brooks*, an award may be proper when the admissions sought concerned matters "of substantial importance." (*Brooks*, *supra*, 179 Cal.App.3d at p. 509.)

Pointing to the probate court's "public policy" question, Claudine argues that the probate court applied an incorrect legal standard in ruling on her request. We disagree. Nothing in the record suggests that the probate court, in ruling, misapplied the statute or misapprehend its discretion. Following the discussion described above, at counsel's request, the probate court agreed to look at *Brooks*, and took the matter under submission. Later, in denying the award, the probate court issued a minute order stating: "Court reviews *Brooks* case . . . . Based on evidence before this court . . . [,] reasons stated on record and arguments of counsel, court denies fees . . . ." The minute order thus establishes that the probate court examined *Brooks*, which discusses Code of Civil Procedure section 2033.420 and the discretion it affords to the trial court. (*Brooks*, *supra*, 179 Cal.App.3d at pp. 508-513, [discussing Code Civ. Proc., former § 2034].) In sum, the probate court did not err in denying Claudine's request for an award under Code of Civil Procedure section 2033.420.**16**

---

**16** Claudine also suggests that the court declined to exercise its discretion under Code of Civil Procedure section 2033.420 because it stated that there would be a "due process problem" if it assessed "a dry paper record" to make new factual findings regarding Florentina Hernandez's status as a care custodian. Her contention fails, as that remark
*(Fn. continued on next page.)*

23

## DISPOSITION

The order of the probate court is affirmed.  The Hernandezes are awarded their costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

WILLHITE, Acting P. J.                    EDMON, J.*

---

related to the court's denial of Claudine's request for an award under subdivision (d) of Probate Code section 21351 (see pt. B.2., *ante*).

Nor does the remark establish a prejudicial abuse of discretion regarding the ruling under Probate Code section 21351, subdivision (d).  As explained above (see pt. B.3., *ante*), that ruling was proper on the ground that there was substantial evidence to support Judge Goetz's finding that Florentina Hernandez was not Gertrude's care custodian in 2004.  Because the existence of substantial evidence is a question of law (*Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1515), our basis for affirming the ruling is unrelated to any exercise of the probate court's discretion.


*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.